UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| 9REN HOLDING S.À.R.L.<br>　73 Cote D'eich<br>　Luxembourg City, 1450<br>　Luxembourg<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>THE KINGDOM OF SPAIN<br>　The Ministry of Justice of the<br>　Government of Spain<br>　Calle Ayala 5<br>　28001 Madrid<br>　Spain<br><br>　　　　　　　　　Defendant. | Civil Action No. 19-cv-1871 |

**COMPLAINT**

Plaintiff 9REN Holding S.À.R.L. ("9REN" or "Plaintiff"), by and through its undersigned counsel, alleges as follows for its Complaint against Defendant the Kingdom of Spain ("Spain"):

**Nature of the Action**

1. This is an action to recognize and enforce an arbitral award (the "ICSID Award")[1] issued on May 31, 2019 in ICSID Case No. ARB/15/15 in favor of 9REN and against Spain. The ICSID Award was issued by an arbitral tribunal (the "Tribunal") following arbitration proceedings conducted in accordance with the Convention on the Settlement of Investment Disputes between

---

[1] A true and correct translation of the ICSID Award, certified by the Secretary-General of ICSID, is attached hereto as Exhibit A.

States and Nationals of Other States (the "ICSID Convention").[2] Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, 9REN requests that this Court (1) enter an order recognizing and enforcing the ICSID Award in the same manner as a final judgment issued by a court of one of the several states, (2) enter judgment in 9REN's favor in the amounts and currency denominations specified in the ICSID Award, and (3) grant any other and further relief that the Court may deem appropriate.

### The Parties

2.  Plaintiff 9REN is a corporation organized under the laws of Luxembourg, having its principal place of business at 73 Cote D'eich, Luxembourg City, 1450, Luxembourg.

3.  Defendant Spain is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-1611.

### Jurisdiction and Venue

4.  This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1330(a), as this case falls within the exception to immunity set forth at 28 U.S.C. § 1605(a)(6) for cases brought against a foreign state to confirm arbitration awards that "[are] or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards," and 22 U.S.C. § 1650a.

5.  Personal jurisdiction over Spain is expressly conferred by 28 U.S.C. § 1330(b), which provides that this Court may exercise personal jurisdiction over a foreign state in any action where service has been made in accordance with 28 U.S.C. § 1608 and over which the Court has subject matter jurisdiction.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

---

[2] A true and correct copy of the ICSID Convention is attached hereto as Exhibit B.

**Factual Background**

## I. Summary of the Dispute

7. 9REN is a Luxembourg-based renewable energy company that owns, operates, and constructs solar photovoltaic ("PV") plants.[3] The Parties' dispute arises out of Spain's modification of its regulatory regime governing renewable energy investment incentives to the disadvantage of 9REN and other renewable energy producers.[4] The Tribunal found that Spain breached its obligations under the fair and equitable treatment standard of Article 10(1) of the Energy Charter Treaty between Luxembourg and Spain (the "ECT" or "Treaty"),[5] and awarded 9REN compensation in the amount of €41.76 million plus interest and costs.[6]

8. The facts underlying 9REN's investment in Spain, and the Parties' dispute, are briefly summarized as follows:

9. In the mid-2000s, Spain introduced a program of legislative and regulatory measures to attract significant investment to build renewable energy capacity in response to a mandate from the European Union ("EU") to rapidly increase its generation of energy from renewable sources.[7] Spain's early attempts in 2003 and 2004 to incentivize renewable energy investment, however, saw limited success, as installed capacity of PV facilities amounted to only 84 mega-watts ("MW") in 2006, less than a quarter of Spain's target of 371 MW by 2010.[8]

10. On May 25, 2007, Spain enacted Royal Decree ("RD") 661/2007, which offered to potential investors guaranteed premium Feed-In Tariff ("FIT") rates for the lifetime of their

---

[3] Ex. A, ¶ 3.
[4] Ex. A, ¶¶ 2-3.
[5] A true and correct English version of the Treaty is attached hereto as Exhibit C.
[6] Ex. A, ¶ 14-18.
[7] Ex. A, ¶ 7.
[8] Ex. A, ¶¶ 79-81.

3

renewable energy facilities (adjusted for inflation during the initial 25 years and thereafter at the rate of 80% of the premium tariff throughout the remaining life of the generating facilities).[9] Under RD 661/2007, FIT rates increased approximately 82% over existing rates in the case of large (over 100 kW) PV plants.[10] As a result, the investment in renewable projects increased significantly, as installed capacity of PV facilities reached 85% of Spain's target in four months, and PV capacity increased by approximately 3,000% from 2007 to 2008.[11] In fact, it was reported in the media that Spain accounted for half of the solar power installed globally in 2008.[12]

11. In reliance on the incentives set forth in RD 661/2007, 9REN, a subsidiary of First Reserve, a U.S.-based partnership founded in 1983 to invest in the energy sector, undertook a series of investments in PV projects in Spain, investing approximately €211 million on April 23, 2008.[13] 9REN, through its subsidiaries, constructed, commissioned, and registered seven PV projects under RD 661/2007, and one PV project under RD 1578/2008, which extended certain FIT benefits to PV facilities registered after the RD 661/2007 registration deadline.[14] The Tribunal found that 9REN reasonably relied upon a legitimate expectation that the FIT benefits set out under RD 661/2007 would continue for the useful life of the seven PV facilities registered under RD 661/2007.[15]

12. From 2010 through 2014, Spain passed measures to roll back the benefits provided under RD 661/2007 and RD 1578/2008.[16] The Tribunal ruled that Spain's revocation of guarantees

---

[9] Ex. A, ¶¶ 8, 300.
[10] Ex. A, ¶ 8.
[11] Ex. A, ¶ 95.
[12] Ex. A, ¶ 95.
[13] Ex. A, ¶¶ 85, 127.
[14] Ex. A, ¶¶ 99, 103, 105
[15] Ex. A, ¶ 297.
[16] Ex. A, ¶¶ 107-114.

under RD 661/2007 frustrated 9REN's legitimate expectation and violated the fair and equitable treatment standard in Article 10(1) of the ECT.[17]

**II.  The Treaty**

13.  Both the relationship and dispute at issue between 9REN and Spain are governed by the ECT, which Spain signed on December 17, 1994 and ratified on December 11, 1997, and Luxembourg signed on December 17, 1994 and ratified on February 7, 1997.[18] The ECT entered into force between Luxembourg and Spain on April 16, 1998.[19]

14.  Article 1(7) of the ECT provides that the term "investor" means "a company or other organization organized in accordance with the law applicable in that Contracting Party."[20] The domestic laws of each Contracting State determine nationality.[21] Spain acknowledged that it is a Contracting Party to the ECT, and over Spain's objections, the Tribunal concluded that 9REN conducts substantive business in Luxembourg and qualifies as "an investor of another contracting state" under the ECT.[22]

15.  Article 1(6) of the ECT defines a covered "investment" broadly to include "every kind of asset, owned or controlled directly or indirectly by an Investor," including: "tangible and intangible, and immovable property and any property rights such as leases, mortgages, liens, and pledges," and "any right conferred by law or contract or by virtue of any licenses or permits granted

---

[17] Ex. A, ¶¶ 307, 311.
[18] Energy Charter Secretariat: Luxembourg, *available at* https://energycharter.org/who-we-are/members-observers/countries/luxembourg/ (last updated July 31, 2015); Energy Charter Secretariat: Spain, *available at* https://energycharter.org/who-we-are/members-observers/countries/spain/ (last updated Aug. 10, 2015).
[19] Energy Charter Secretariat: Luxembourg, *available at* https://energycharter.org/who-we-are/members-observers/countries/luxembourg/ (last updated July 31, 2015); Energy Charter Secretariat: Spain, *available at* https://energycharter.org/who-we-are/members-observers/countries/spain/ (last updated Aug. 10, 2015).
[20] Ex. C, Article 1(7).
[21] Ex. C, Article 1(7).
[22] Ex. A, ¶¶ 119, 126.

pursuant to law to undertake any Economic Activity in the Energy Sector."[23] The Tribunal found that 9REN's various investments in Spain's energy sector constituted "covered investments" under the ECT.[24]

16.     The ECT also sets forth the substantive obligations of each Party to protect the investors of the other Party, as well as their investments. Specifically, Article 10(1) provides:

> Each Contracting Party shall, in accordance with the provisions of this Treaty, encourage and create stable, equitable, favourable and transparent conditions of Investors of other Contracting Parties to make Investments in its Area. **Such conditions shall include a commitment to accord at all times to Investments of Investors of other Contracting Parties fair and equitable treatment.** Such Investments shall also enjoy the most constant protection and security and no Contracting Party shall in any way impair by unreasonable or discriminatory measures their management, maintenance, use, enjoyment or disposal. In no case shall such Investments be accorded treatment less favourable than that required by international law, including treaty obligations. Each Contracting Party shall observe any obligations it has entered into with an Investor or an Investment of an Investor of any other Contracting Party.[25]

### III.    The Parties' Agreement to Arbitrate

17.     Article 26(4) of the ECT, which memorializes Luxembourg's and Spain's consent to arbitration of claims by an investor of a Party against the other Party, provides that:

> In the event that an Investor chooses to submit the dispute for resolution [in international arbitration], the Investor shall further provide its consent in writing for the dispute to be submitted to:
>
> (a)(i) The International Centre for Settlement of Investment Disputes . . . if the Contracting Party of the Investor and the Contracting Party to the dispute are both parties to the ICSID Convention . . . .[26]

18.     9REN affirmed in writing its consent to ICSID jurisdiction in its Request for Arbitration.[27]

---

[23] Ex. C, Article 1(6).
[24] Ex. A, ¶¶ 129-130.
[25] Ex. C, Article 10(1) (emphasis added).
[26] Ex. C, Article 26(4).
[27] A true and correct copy of the Request for Arbitration is attached hereto as Exhibit D. Ex. D ¶ 59.

19.     Spain gave its "unconditional consent" to the submission of this dispute to ICSID arbitration in Article 26(3)(a) of the ECT, which provides that "subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article."[28] The Tribunal found no exception to apply under Article 26(3)(b) or (c).[29]

20.     Accordingly, under Article 26 of the ECT, 9REN's submission to arbitration coupled with Spain's consent set forth in Article 26(3)(a) constituted an agreement to arbitrate within the meaning of Chapter II of the ICSID Convention.

## IV.    The Arbitration

21.     On March 31, 2015, 9REN commenced the arbitration by filing and serving a Request for Arbitration on Spain.[30] On April 21, 2015, the Secretary-General of ICSID registered the Request for Arbitration in accordance with Article 36(3) of the ICSID Convention and notified the Parties of the registration.[31]

22.     The arbitration was seated in Washington, D.C., and proceeded in accordance with the ICSID Convention and ICSID Arbitration Rules.[32] The selection of the Tribunal was completed on February 8, 2016.[33] The Tribunal selected by the Parties consisted of the Honorable Ian Binnie, CC, QC (President), Mr. David R. Haigh, QC (appointed by 9REN), and Mr. V.V. Veeder, QC (appointed by Spain).[34]

23.     Spain was represented in the arbitration by attorneys from the Ministry of Justice

---

[28] Ex. A, ¶ 133.
[29] Ex. A, ¶ 134.
[30] Ex. A, ¶ 19.
[31] Ex. A, ¶ 20.
[32] Ex. A, ¶ 25.
[33] Ex. A, ¶ 23.
[34] Ex. A, ¶¶ 22-23.

of the Government of Spain.[35] Spain participated in the arbitration, including submitting a Counter-Memorial on the Merits and Memorial on Jurisdiction, as well as a Rejoinder on the Merits and Reply on Jurisdiction.[36]

24. The Tribunal conducted the hearing (in which both parties participated and were represented by their respective counsel) on jurisdiction and liability at the World Bank facilities in Paris from December 4, 2017 to December 8, 2017, during which the Tribunal heard testimony from both 9REN's and Spain's witnesses and experts.[37] The Tribunal closed the proceedings on December 21, 2018.[38]

## V. The ICSID Award

25. The Tribunal issued the ICSID Award on May 31, 2019.

26. With regard to jurisdiction, the Tribunal ruled that 9REN was an "investor of Another Contracting State" under Article 1(7) of the ECT, as a legal entity doing business in Luxembourg and through its acquisition of Spanish companies engaged in renewable energy projects.[39] The Tribunal also found that the dispute concerned a "covered investment" under the broad definition of a set forth in Article 1(6) of the ECT.[40]

27. The Tribunal also addressed four additional jurisdictional objections, namely that the ECT Tribunal lacks jurisdiction: (1) to arbitrate an investment dispute where the ECT contracting parties are both EU members, (2) *ratione voluntatis* on the grounds that 9REN is shell company with "no substantial business activity" in Luxembourg and is not entitled to bring claims

---

[35] Ex. A, ¶ 43.
[36] Ex. A, ¶¶ 27, 34.
[37] Ex. A, ¶ 43.
[38] Ex. A, ¶ 59.
[39] Ex. A, ¶¶ 118-126.
[40] Ex. A, ¶¶ 129-130.

under the ECT, (3) because any claim for compensation belongs to the operating companies rather than 9REN, the corporate parent, and (4) to address an alleged breach as related to the 7% Tax on the Value of the Production of Electrical Energy ("TVPEE") because Article 10 of the ECT denies remedies relating to taxation measures of Contracting Parties.[41]

28. After extensive briefing, the Tribunal rejected Spain's jurisdictional challenges, concluding, *inter alia*, that: (1) the dispute is an ICSID arbitration under the ICSID Convention without a seat or legal place in any EU member state,[42] (2) Spain failed to establish that 9REN lacks substantial business activities in Luxembourg,[43] (3) Spain's attempt to deny jurisdiction based on a common corporate structure had been consistently rejected by investor-state tribunals,[44] and (4) although the TVPEE is a tax not subject to attack under Article 10(1) of the ECT, the Tribunal has jurisdiction to determine whether the TVPEE tax amounted to an illegal expropriation under Article 13.[45]

29. On the merits of 9REN's claims, the Tribunal found that 9REN reasonably relied upon a legitimate expectation that the FIT benefits set out under RD 661/2007 would continue for the useful life of seven of its eight PV facilities.[46] The Tribunal concluded that even in the absence of direct government to investor communications, Spain's clear and specific commitment "made for the purpose of inducing investment, which succeeded in attracting [9REN's] investment and once made resulted in losses to [9REN]," was sufficient to create an enforceable "legitimate expectation."[47] Rejecting "Spain's position . . . that it alone should benefit from rising prices, but

---

[41] Ex. A, ¶ 141.
[42] Ex. A, ¶ 173.
[43] Ex. A, ¶ 182.
[44] Ex. A, ¶ 186.
[45] Ex. A, ¶¶ 207-208.
[46] Ex. A, ¶¶ 297-298.
[47] Ex. A, ¶ 295.

the burden of falling prices is to be off-loaded onto investors," the Tribunal ruled that Spain's revocation of guarantees under RD 661/2007 frustrated 9REN's legitimate expectation and violated the fair and equitable standard in Article 10(1) of the ECT.[48] The Tribunal rejected 9REN's other claims.[49]

30. As compensation for Spain's breaches of the ECT, the Tribunal awarded 9REN compensation in the amount of €41.76 million plus interest at a rate equivalent to the 5-year Spanish Government bond yield compounded annually from June 30, 2014 until Spain's full and final satisfaction of the ICSID Award; and costs of the arbitration, including (but not limited to) 9REN's legal and expert fees and expenses for a total of $4,814,570 and €562,458, and the Tribunal's and ICSID's fees and expenses in the sum of $299,908.16.[50]

31. The ICSID Award remains unpaid. By this action, 9REN seeks recognition and enforcement of the ICSID Award by this Court.

**Cause of Action – Recognition of the ICSID Award Pursuant to 22 U.S.C. § 1650a**

32. 9REN repeats and realleges the allegations in paragraphs 1 through 31 as if set forth fully herein.

33. The United States is a signatory to the ICSID Convention, which establishes a framework for the resolution of investment disputes between a foreign sovereign party to the Convention and a national of another State party to the Convention. Awards issued pursuant to the ICSID Convention are subject to recognition and enforcement in the United States under Article 54 of the ICSID Convention and pursuant to 22 U.S.C. § 1650a.

---

[48] Ex. A, ¶ 311.
[49] Ex. A, ¶¶ 345, 372.
[50] Ex. A, ¶¶ 417, 429, 433, 445, 446-449.

34. Spain signed the ICSID Convention on March 21, 1994, and deposited its ratification on August 18, 1994.[51] The ICSID Convention entered into force for Spain on September 17, 1994. As the Tribunal found, 9REN is a national of Luxembourg,[52] which became a State party to the ICSID Convention on August 29, 1970.[53]

35. Article 53(1) of the ICSID Convention provides that an award rendered by an ICSID tribunal "shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention."[54] There is no stay of enforcement currently in place. Thus, pursuant to Article 53 of the ICSID Convention, Spain is obligated to abide by and comply with the terms of the ICSID Award without any further action by 9REN.

36. Article 54(1) of the ICSID Convention provides that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State."[55]

37. The United States has been a party to the ICSID Convention since October 14, 1966,[56] when the Convention entered into force and Congress enacted enabling legislation in the form of 22 U.S.C. § 1650a, which provides as follows:

---

[51] *See* Database of ICSID Member States, *available at* https://icsid.worldbank.org/en/Pages/about/Database-of-Member-States.aspx (last visited June 17, 2019).
[52] Ex. A, ¶ 126.
[53] *See* Database of ICSID Member States, *available at* https://icsid.worldbank.org/en/Pages/about/Database-of-Member-States.aspx (last visited June 17, 2019).
[54] Ex. B, Article 53(1).
[55] Ex. B, Article 54(1).
[56] *See* Database of ICSID Member States, *available at* https://icsid.worldbank.org/en/Pages/about/Database-of-Member-States.aspx (last visited June 17, 2019).

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the convention.

38. The ICSID Award was rendered by an arbitral tribunal pursuant to Chapter IV of the ICSID Convention.

39. The ICSID Award includes pecuniary obligations in the amount of €41.76 million plus interest at a rate equivalent to the 5-year Spanish Government bond yield compounded annually from June 30, 2014 until Spain's full and final satisfaction of the ICSID Award; and costs of the arbitration, including (but not limited to) 9REN's legal and expert fees and expenses for a total of $4,814,570 and €562,458, and the Tribunal's and ICSID's fees and expenses in the sum of $299,908.16.[57] Spain has not paid any part of this outstanding pecuniary obligation.

40. Pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention, the ICSID Award must be recognized and the pecuniary obligations therein must be enforced "as if the award were a final judgment of a court of general jurisdiction of one of the several States."[58]

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgment:

(a) Recognizing the ICSID Award and enforcing the pecuniary obligations imposed by the ICSID Award as if the ICSID Award were a final judgment of a court of general jurisdiction of one of the several States;

---

[57] Ex. A, ¶¶ 417, 429, 433, 445, 446-449.
[58] 22 U.S.C. § 1650a.

Case 1:19-cv-01871-TSC   Document 1   Filed 06/25/19   Page 13 of 13

(b)     Entering judgment in 9REN's favor in the amounts specified in the ICSID Award, including the principal amount of €41.76 million, legal costs, arbitration costs, and pre-award and post-award interest as granted by the Tribunal; and

(c)     Awarding such other and further relief as may be proper.

Dated: June 25, 2019

Respectfully submitted,

/s/ James E. Berger

James E. Berger (D.C. Bar 481408)
Charlene C. Sun (D.C. Bar 1027854)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Plaintiff 9REN Holding S.À.R.L.*

13