UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **9REN HOLDING S.A.R.L.**, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 19-cv-01871 (TSC) |
| **KINGDOM OF SPAIN**, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff 9REN Holding S.A.R.L. seeks to enforce a € 41 million arbitral award issued by the International Centre for Settlement of Investment Disputes (ICSID) against Defendant, the Kingdom of Spain. Spain moves to dismiss or stay the proceedings until the ICSID Tribunal decides on its petition to annul. (ECF No. 11.) 9REN moves for judgment on the pleadings. (ECF No. 14.) This court agrees with other courts in this district that "it is wiser to . . . stay these proceedings pending the opinion of the ICSID regarding Spain's petition to annul." *See Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, 397 F. Supp. 3d 34, 36 (D.D.C. 2019).

For the reasons stated below, the court finds that a temporary stay is warranted, and therefore the court will GRANT Spain's motion to stay. The court will further deny, without prejudice, Spain's motion to dismiss and 9REN's motion for judgment on the pleadings.

### I.   BACKGROUND

9REN, incorporated in Luxembourg, owns, constructs, and operates solar photovoltaic plants. (ECF No. 1, Compl. ¶ 7.) In 2008, it constructed, commissioned, and registered seven solar photovoltaic energy plants, worth approximately € 211 million, to capitalize on Spain's guaranteed tariffs for renewable energy producers. (Compl. ¶¶ 9–11.) Spain later changed its

regulations, rolling back the expected benefits from investing in and constructing the solar energy plants.  (*Id.* ¶ 11.)  These regulatory changes allegedly caused 9REN significant harm, and the company sought to arbitrate the dispute with Spain under the Energy Charter Treaty (ECT).  (*Id.* ¶ 12.)

The ECT is a multilateral treaty signed by fifty-four nations and organizations, including Spain and Luxembourg, and is intended to promote international cooperation in the energy sector.  (ECF No. 1-3, ECT.)  Article 26 of the ECT provides that "[d]isputes between a Contracting Party and an Investor of another Contracting Party relating to an Investment of the latter in the Area of the former" may be submitted to arbitration.  (*Id.* at 43–46.)

In 2015, 9REN initiated arbitral proceedings against Spain before a three-member ICSID[1] tribunal, claiming that the changes Spain made to its regulations violated Article 10(1) of the ECT, which obligates contracting states to provide investors with "fair and equitable treatment."  (Compl. ¶ 29.)  The ICSID tribunal found Spain liable for breaching Article 10(1) and ordered it to pay over € 41 million in damages.  (*Id.* ¶¶ 29–30.)

While ICSID awards cannot be appealed, a party may submit an application before an ICSID committee to annul the award on limited grounds.  After this case was filed, Spain applied to annul the award, triggering an automatic, provisional stay of enforcement of the award.  (ECF No. 18-1 at 1.)  The ICSID annulment committee has provisionally stayed enforcement of the award.  (*Id.* at 2.)

---

[1] The ICSID Convention is a multilateral treaty created to facilitate foreign investments and to which the United States, Spain and Luxembourg are parties.  The treaty provides a mechanism for the resolution of investment disputes in front of an independent arbitral tribunal.  (ECF No. 1-2, ICSID Convention.)

## II.     DISCUSSION

### A. Jurisdiction

Spain moves to dismiss on several grounds, including that this court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act because there is no arbitration agreement. (ECF No. 11-1, Def. Br. at 19–26.) Neither side challenges the court's power to enter a stay. Nonetheless, courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Despite this obligation, a court may decide "certain non-merits, nonjurisdictional issues . . . because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Pub. Citizen v. U.S. Dist. Court for D.C.*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks and citation omitted)). When faced with such a non-merits, nonjurisdictional threshold issue, and "when considerations of convenience, fairness, and judicial economy so warrant," a district court can "bypass[] questions of subject-matter and personal jurisdiction." *Sinochem Int'l Co.*, 549 U.S. at 432.

Courts in this district have held that stays are a threshold, non-merits issue which a court may consider before resolving jurisdictional issues. *See Gretton Ltd. v. Republic of Uzbekistan*, No. 18-cv-1755, 2019 WL 464793, at *2–3 (D.D.C. Feb. 6, 2019) (staying petition to enforce an arbitral award before determining subject-matter jurisdiction); *Hulley Enters. Ltd. v. Russian Federation*, 211 F. Supp. 3d 269, 277–80 (D.D.C. 2016) (same) ("A stay of proceedings in this case is exactly the type of nonmerits action the *Sinochem* decision contemplates."); *Seneca Nation of Indians v. U.S. Dep't of Health & Human Servs.*, 144 F. Supp. 3d 115, 118–19 (D.D.C. 2015) (staying an action before agency decision and before determining subject-matter

3

jurisdiction).  Accordingly, the court will resolve the threshold stay issue before the thornier jurisdictional issues, which involve sovereign immunity and international treaties.

## B. Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  District courts "have broad discretion" in deciding whether to stay proceedings "pending the resolution of independent legal proceedings." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C.2003) (citing *Landis*, 299 U.S. at 254).  In considering a stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Government of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55).  The party seeking the stay bears the burden, and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 88 (D.D.C. 2017) (quoting *Landis*, 299 U.S. at 255) (internal quotation marks omitted).  And, as here, when a party seeks an indefinite stay, the stay "must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev.*, 668 F.3d at 732.  A court may not "order[] a stay 'of indefinite duration in the absence of a pressing need.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

Here, the court's interest in judicial economy favors a stay.  "Litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (quoting *Nat'l*

*Shopmen Pension Fund v. Folger Adam Sec.*, 274 B.R. 1, 3 (D.D.C. 2002)). Because Spain continues to raise the same jurisdictional arguments in this court that were before the arbitral tribunal, the outcome of the annulment proceedings "may affect this Court's determinations, at a minimum, by virtue of the[ir] persuasive value." *Hulley Enters. Ltd.*, 211 F. Supp. 3d at 284; *cf. Clientron Corp. v. Devon IT, Inc.*, No. 13-cv-05634, 2014 WL 940406, at *5 (E.D. Pa. Mar. 10, 2014) (explaining a stay was not warranted where the result of the foreign proceedings would have no effect on the confirmation proceedings). A hasty resolution resulting in inconsistent rulings is not in the interest of judicial economy.

Spain's motion to dismiss raises intricate questions regarding the validity of arbitration agreements with EU member states under EU law. (Def. Br. at 19–26.) This court is "loath to wade into this territory unnecessarily," and agrees that the more prudent course is to refrain from delving into determinations on EU law at this stage. *Masdar*, 397 F. Supp. 3d at 40 (noting in a case against Spain raising similar issues that "considerations of comity are particularly resonant here, given that resolving this case mandates addressing a conflict between decades-old treaties and newly minted EU case law").

9REN contends that under the ICSID, this court does not have discretion to stay the proceedings. (ECF No. 13, Pl. Br. at 41.) However, the court's authority to issue the stay arises under its inherent power, as this court has not yet even determined whether it has jurisdiction to hear the case. Moreover, courts in this district have issued stays in cases arising under the ICSID, even when the ICSID lifted its stay on enforcing an award before issuing a decision in annulment proceedings. *See* Minute Order, *Infrastructure Servs. Lux. S.A.R.L. and Energia Termosolar B.V. v. Kingdom of Spain*, No. 1:18-cv-01753 (D.D.C. July 15, 2020) (order continuing stay on proceedings despite ICSID lifting its provisional stay); *Unión Fenosa Gas,*

*S.A. v. Arab Republic of Egypt*, No. 18-cv-2395, 2020 WL 2996085, at *3–4 (D.D.C. June 4, 2020) (staying proceedings pending annulment proceedings before the ICSID, despite the annulment committee terminating its stay). In addition, the annulment committee has now provisionally stayed enforcement of the award. (ECF No. 18-1.)

Finally, balancing the hardships to each party also favors a stay. Litigating the validity of arbitral awards in two forums would burden Spain. Moreover, the risk of premature enforcement could result in Spain trying to recover assets seized during this action if it were to prevail in the annulment proceedings. *See In re Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 118 (D.D.C. 2015). 9REN did not cite any hardship it might face, (*see generally* Pl. Br.), and the court notes that if 9REN ultimately prevails it will likely be compensated for any delay because the award includes interest. (Compl. ¶ 30.) Thus, the hardship to Spain, which could be significant, outweighs any potential hardship to 9REN.

In sum, Spain has met its burden to show a "pressing need" for a stay pending the outcome of the annulment proceedings. However, in an effort to ensure that the proceedings before this court are not unduly delayed, by separate order, the court will provide for prompt and regular review of the ongoing proceedings before the ICSID and, if 9REN prevails in those proceedings, will promptly address the merits in this case.

### III. CONCLUSION

For the reasons stated, the court will GRANT Defendant's motion to stay and proceedings are stayed until resolution of the current annulment proceedings before the ICSID. The court will further deny, without prejudice, Spain's motion to dismiss and 9REN's motion for judgment on the pleadings. A corresponding Order will issue separately.

Date:  September 30, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge